412 S.E.2d 269

STATE of West Virginia ex rel. DEPARTMENT OF TRANSPORTATION, DIVISION OF HIGHWAYS, an Agency of the State of West Virginia, and David L. George, a Member of an Official Weighing Crew Designated by the Commissioner of Highways, Petitioners,

v.

Honorable A.L. SOMMERVILLE, Jr., Judge of the Circuit Court of Webster County; Thomas Arthur Grimes; and Melvin Cox, Respondents.

No. 20324.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 1, 1991.

Decided Dec. 12, 1991.

Anthony G. Halkias, Robert F. Bible, West Virginia Div. of Highways, Charleston, Ernest V. Morton, Jr., Webster County Prosecutor's Office, Webster Springs, for petitioners.

John M. Hedges, Charleston, for respondent, Judge Sommerville.

William W. Talbott, Webster Springs, for respondents, Arthur Grimes and Melvin Cox.

McHUGH, Justice:

This original proceeding is before the Court upon a petition for a writ of prohibition sought by the West Virginia Department of Transportation, the Division of Highways (a division of the Department of Transportation), and David George, a member of a Division of Highways weighing crew. The respondents are A.L. Sommerville, Judge of the Circuit Court of Webster County, Arthur Grimes, and Melvin Cox.

## I

On March 29, 1991, a truck driven by respondent Grimes and owned by respondent Cox, was stopped in Webster County by members of a weighing crew of the Division of Highways, including petitioner George.

The purpose of the stop was to determine if the truck exceeded weight limitations set forth in Chapter 17C of the *West Virginia Code*. The stop was conducted pursuant to authority set forth in *W.Va.Code,* 17C–17–10 [1976].[1]

The truck's driver, Grimes, refused to submit the truck to weighing.

Without the consent of Grimes, George and other members of the weighing crew arranged for a private towing company to place the truck on portable scales and weigh the truck. It was determined that the truck was 41,100 pounds over the legal limit set forth in *W.Va.Code,* 17C–17–9 [1983].[2] The truck was then towed to a facility of the Division of Highways in Cowen.

On April 2, 1991, Grimes and Cox sought an injunction in the Webster County Circuit Court, to restrain the Division of Highways from seizing and weighing the vehicle following a refusal by the driver to submit the vehicle to weighing.

Following a hearing before the respondent circuit court judge, that court, on May 23, 1991, issued a permanent injunction, restraining the Division of Highways from weighing a vehicle if the driver refuses to submit the vehicle to such weighing.

The petitioner seeks to dissolve the circuit court's permanent injunction.

## II

The issue in this case is whether *W.Va. Code,* 17C–17–10 [1976] authorizes the Division of Highways to weigh a vehicle even if the driver of such vehicle refuses to con-

---

1. *W.Va.Code,* 17C–17–10 [1976] provides, in part:

   (a) Any police officer or employee of the department of highways designated by the commissioner of highways as a member of an official weighing crew *may require the driver of any vehicle or combination of vehicles on any highway to stop and submit such vehicle or combination of vehicles to a weighing* with portable or stationary weighing devices *or submit such vehicle or combination of vehicles to a measuring or to any other examination necessary* to determine if such vehicle or combination of vehicles is in violation of any of the provisions of this article, and may require that such vehicle or combination of vehicles

be driven to the nearest weighing device, but only if such weighing device is within two miles of the place where the vehicle or combination of vehicles is stopped.

. . . .

   (c) Any driver of a vehicle or combination of vehicles who fails or refuses to comply with any requirement or provision of this section shall be guilty of a misdemeanor.

(emphasis supplied)

2. *W.Va.Code,* 17C–17–9 [1983] provides a table which sets forth maximum weights for various vehicles. These maximum weights depend upon the distance between the vehicle's axles.

sent to the weighing. For reasons stated in this opinion, we believe that that statute does authorize such weighing.

### III

As set forth in subsection (c) of *W.Va. Code*, 17C–17–10 [1976], it is a misdemeanor for a driver to refuse to comply with the provisions of *W.Va.Code*, 17C–17–10 [1976]. The penalties for this violation are set forth in *W.Va.Code*, 17C–18–1 [1951].[3]

If, however, the driver submits the vehicle to weighing, the weighing is done on either portable scales or taken to a weighing device within two miles of where the vehicle is stopped. *W.Va.Code*, 17C–17–10(a) [1976].

If the vehicle is determined to be overweight, then the "owner, lessee, or borrower" of the vehicle, upon conviction, will be guilty of a misdemeanor and fined according to a schedule of fines set forth in *W.Va.Code*, 17C–17–14 [1975].[4]

The petitioners contend that *W.Va.Code*, 17C–17–10 [1976] is primarily remedial, and therefore, the Division of Highways should not be prevented from enforcing the purpose of the statute, which is to remove overweight vehicles from the road. In support of this contention, the petitioners rely on *State v. Chittester*, 139 W.Va. 268, 79 S.E.2d 845 (1954), for the proposition that the primary purpose of this state's motor vehicle statutes is for "the protection of the public highways, and the promotion of safety in their use." *Id.* 139 W.Va. at 272, 79 S.E.2d at 847.

The respondents, on the other hand, contend that the statute is obviously penal because of the penalties set forth throughout chapter 17C. Because the statute is penal, the respondents maintain that it

must be strictly construed in favor of the "accused." *See State ex rel. Constanzo v. Kindelberger*, 88 W.Va. 131, 135, 106 S.E. 434, 435 (1921).

Obviously, *W.Va.Code*, 17C–17–10 [1976] contains provisions that are both remedial and penal. "[S]tatutes both remedial and penal in their provisions will be liberally construed insofar as they are remedial to the end that the relief which they are intended to afford may be had to the full extent thereof, and strictly construed insofar as they are penal." 17 M.J. *Statutes* § 72 (1979). Put another way by one court: "Where a statute is both remedial and penal, remedial in one part while penal in another, it should be considered a remedial statute when enforcement of the remedy is sought and penal when enforcement of the penalty is sought." *City of St. Louis v. Carpenter*, 341 S.W.2d 786, 788 (Mo.1961). *See* 73 Am.Jur.2d *Statutes* § 292 (1974).

Accordingly, we too hold that where a statute contains provisions which are both remedial and penal, such statute should be considered remedial when seeking to enforce the purpose for which it was enacted, and should be considered penal when seeking to enforce the penalty provided therein.

Therefore, appropriate construction is given to each such provision.

The petitioners contend that the legislative intent of establishing and enforcing weight limitations is defeated by the circuit court's interpretation of *W.Va.Code*, 17C–17–10 [1976], because basically, if a vehicle is overweight, its owner will always choose to refuse to comply with an attempt to weigh, pay the fine pursuant to *W.Va. Code*, 17C–18–1 [1951], which ranges from

---

**3.** *W.Va.Code*, 17C–18–1(b) [1951] provides:

(b) Every person convicted of a misdemeanor for a violation of any of the provisions of this chapter for which another penalty is not provided shall for a first conviction thereof be punished by a fine of not more than one hundred dollars or by imprisonment for not more than ten days; for a second such conviction within one year thereafter such person shall be punished by a fine of not more than two hundred dollars or by impris-

onment for not more than twenty days or by both such fine and imprisonment; upon a third or subsequent conviction such person shall be punished by a fine of not more than five hundred dollars or by imprisonment for not more than six months or both such fine and imprisonment.

**4.** The fines set forth in *W.Va.Code*, 17C–17–14 [1975] gradually increase, depending upon the vehicle's excess weight.

$100 to $500, and never be penalized for having an overweight vehicle.[5]

■ We believe that *W.Va.Code,* 17C–17–10 [1976] authorizes the Division of Highways to weigh a vehicle even where the driver refuses to consent, for two reasons: (1) the plain language of that statute; and (2) the remedial purpose of that statute as indicated in particular provisions thereof, namely, subsection (a).

The respondents assert that *W.Va.Code,* 17C–17–10 [1976] contains no express authority to allow the Division of Highways to weigh a vehicle even when the driver refuses to consent.[6]

*W.Va.Code,* 17C–17–10 [1976] clearly states that a police officer or a member of a weighing crew of the Division of Highways "may require the driver of any vehicle ... to stop *and submit* such vehicle ... to a weighing[.]" (emphasis supplied) The statute obviously grants the authority to not only require a driver to "submit" the vehicle to a weighing, but also provides for a penalty to the driver if the driver refuses to comply with the statute. The statute does not prohibit weighing a vehicle where the driver refuses, nor does the statute condition weighing upon the driver's consent. Rather, in very direct terms, the legislature has made it clear that police officers and certain personnel of the Division of Highways have the authority to require a driver to stop *and* submit a vehicle to a weighing.

Although subsection (c) of *W.Va.Code,* 17C–17–10 [1976] provides a punishment for a driver who refuses to comply with this section, nothing in the statute indicates that this penal provision excludes the application of the remedial portion of the statute, namely, subsection (a), which provides the authority to require a driver to submit a vehicle to weighing. Rather, subsection (c) makes it a misdemeanor for a driver to fail or refuse "to comply with *any* requirement or provision of this section[.]" (emphasis supplied) One of those requirements is to "submit" a stopped vehicle to a weighing.

"Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968). *Accord,* syl., *State ex rel. Bowlick v. Board of Education,* 176 W.Va. 524, 345 S.E.2d 824 (1986); syl. pt. 2, *State ex rel. Underwood v. Silverstein,* 167 W.Va. 121, 278 S.E.2d 886 (1981).

The remedial objective of *W.Va.Code,* 17C–17–10 [1976] is to prevent overweight vehicles from operating on the highways of this state. Because of the unusual dual objectives of the statute, the circuit court understandably may have focused on the penal provisions of this statute, but overlooked the remedial purpose contained therein. However, as we have held in syllabus point 1 herein, a statute which contains remedial *and* penal provisions should be considered remedial when seeking to

---

5. Our research indicates that this type of statute is not uncommon, although the language of such statutes varies from *W.Va.Code,* 17C–17–10 [1976].

For example, *N.C.Gen.Stat.* § 20–183.11 (1975) provides that it is a misdemeanor for a driver "to refuse to permit his vehicle to be weighed at such [weighing] station or to refuse to drive his vehicle upon the scales so that the same may be weighed."

*Mich.Comp.Laws Ann.* § 257.724(4) (West 1988) provides that it is a misdemeanor if a driver "knowingly fails to stop at or ... knowingly bypasses any scales or weighing station[.]" *Mich.Comp.Laws Ann.* § 257.724(6) (West 1988) also provides that it is a misdemeanor if a driver "knowingly fails to stop when requested or ordered to do so by a police officer, or [by one] authorized to require the driver to stop and submit to a weighing of the vehicle[.]"

*N.J.Stat.Ann.* § 39:3–84.3(h) (1983) provides that it is a misdemeanor if a driver "fails or refuses to stop and submit the vehicle or combination of vehicles, including load or contents, to *measurement or weighing*[.]" (emphasis supplied)

6. The respondents make no argument with respect to the authority of the Division of Highways, pursuant to *W.Va.Code,* 17C–17–10(a) [1976], to "submit [a] vehicle or combination of vehicles to a *measuring* or to *any other examination necessary* to determine if such vehicle or combination of vehicles" violates other provisions concerning a vehicle's width, height and length. (emphasis supplied) *See, e.g., W.Va. Code,* 17C–17–2 [1983]; *W.Va.Code,* 17C–17–3 [1951]; *W.Va.Code,* 17C–17–4 [1989].

enforce the purpose for which it was enacted, namely, as stated above, to prevent overweight vehicles from operating on the highways of this state. *See also Joyner v. Matthews,* 193 Va. 10, 68 S.E.2d 127 (1951) (motor vehicle weight statute is remedial and should be liberally construed so as to effectuate legislative will which prompted its passage).[7]

"The policy that a remedial statute should be liberally construed in order to effectuate the remedial purpose for which it was enacted is firmly established." 3 N. Singer, *[Sutherland on] Statutes and Statutory Constructions* § 60.01, at 55 (Sands 4th ed. rev. 1986). *See Willis v. O'Brien,* 151 W.Va. 628, 634, 153 S.E.2d 178, 181, *cert. denied,* 389 U.S. 848, 88 S.Ct. 71, 19 L.Ed.2d 116 (1967).

Accordingly, we hold that *W.Va.Code,* 17C–17–10(a) [1976] authorizes a police officer or a member of a Division of Highways' official weighing crew to "require the driver of any vehicle or combination of vehicles on any highway to stop and submit such vehicle or combination of vehicles to a weighing[,]" even where the driver refuses to comply pursuant to *W.Va.Code,* 17C–17–10(c) [1976] and is thus subject to a criminal penalty.

### IV

Consistent with the foregoing, we grant the petitioners' writ of prohibition, thus dissolving the permanent injunction granted below.[8]

Writ granted.

---

7. The respondents trace the history of two sections under this chapter. Specifically, they point to the 1961 amendment to *W.Va.Code,* 17C–17–14, which prohibits the impounding of a vehicle if its owner is a resident of West Virginia or has a principal place of business in West Virginia, and the vehicle is licensed in this state. The respondents also point to the 1976 amendment to *W.Va.Code,* 17C–17–10, which prohibits detaining a vehicle for more than one hour. These amendments, the respondents contend, indicate a legislative intent to restrain the Division of Highways with respect to seizing vehicles. However, the issue in this case does not involve the seizure or impoundment of vehicles. *W.Va.Code,* 17C–17–10(a) [1976], in a portion not applicable to the issue in this case, prohibits the detaining of a vehicle for "more than one hour from the time [the vehicle] is stopped for weighing unless the vehicle or combination of vehicles is impounded[.]" Rather, the sole issue is whether *W.Va.Code,* 17C–17–10 [1976] authorizes the weighing of a vehicle even where the driver has refused to submit the vehicle to such weighing.

8. In light of our decision in this case, we need not address the petitioners' assertion that it was prepared to prove that the granting of an injunction in this case could result in the State of West Virginia losing up to ten percent of its federal highway funds (or approximately $14 million) over the next five years. *See* 23 *U.S.C.* § 141 (1988).

The petitioners' claim in this regard is grounded upon a letter from the West Virginia Division of the Federal Highway Administration. The letter, from the Division Administrator, states that it encourages the petitioners' appeal in this case "to avoid reductions of Federal funds." However, there is no specific assertion that a certain interpretation of *W.Va. Code,* 17C–17–10 [1976] would actually prevent the State from certifying that its vehicle weight laws are being enforced.