524 S.E.2d 688

Lisa Sue King SHAFFER, Administratrix and Personal Representative of the Estate of Virginia Dare Keeling King, Deceased, Plaintiff Below, Appellee,

v.

ACME LIMESTONE COMPANY, INC., a West Virginia Corporation; J.L. Spade Trucking, Inc.; Jack L. Spade, Individually and Doing Business as J.L. Spade Trucking; and Jonathan Dale Riffey, Defendants Below, Appellants.

No. 26114.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 6, 1999.

Decided Dec. 3, 1999.

Robert B. Allen, James P. McHugh, Allen, Guthrie & McHugh, Charleston, West Virginia, Attorneys for the Appellant.

Mary H. Sanders, Shawn Romano, Huddelston, Bolen, Beatty, Porter & Copen, Charleston, West Virginia, Attorneys for the Appellees.

DAVIS, Justice:

Lisa Sue King Shaffer, appellant/plaintiff, (hereinafter referred to as "Ms. Shaffer"),[1] appeals from an order of the Circuit Court of Greenbrier County granting summary judgment to Acme Limestone Company, Inc., appellee/defendant (hereinafter referred to as "Acme"). Originally, this action was filed by Ms. Shaffer against three separate defendants: Acme; J.L. Spade Trucking (hereinafter referred to as "Spade Trucking"); and Jonathan Dale Riffey (hereinafter referred to as "Mr. Riffey").[2] The circuit court granted summary judgment to Acme concluding that Acme and Spade Trucking maintained an independent contractor relationship. Therefore, Acme was not liable for the wrongful death caused by Spade Trucking and its employee, Mr. Riffey. In this appeal, Ms. Shaffer contends that factual issues are in dispute as to whether an independent contractor relationship existed between Acme and Spade Trucking. Alternatively, Ms. Shaffer asserts that if an independent contractor relationship existed between Acme and Spade Trucking, certain exceptions to the independent contractor defense exist which preclude summary judgment. Based upon the parties' arguments on appeal, the record designated for appellate review, and the pertinent authorities, we affirm in part, and reverse in part, the decision of the Circuit Court of Greenbrier County.

---

1. Shaffer filed this action as the administratrix and personal representative of the estate of Virginia Dare Keeling King, deceased.

2. Ms. Shaffer settled with Spade Trucking and Mr. Riffey prior to summary judgment.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Acme operates a stone quarry facility near Fort Spring, Greenbrier County, West Virginia. Acme sells its products to government agencies and private customers. In most cases, Acme is required to transport its products to the location designated by the customer. In order to transport its products to its customers, Acme retains the services of persons and companies owning trucks, including Spade Trucking.

On December 15, 1997, Virginia Dare Keeling King was killed when the car she was driving was involved in a collision with a truck owned by Spade Trucking. The truck was being driven by Mr. Riffey, a Spade Trucking employee. Mr. Riffey failed to stop at an intersection stop sign and struck the victim's car.[3] Immediately prior to the accident, Mr. Riffey had delivered stone to one of Acme's customers. At the time of accident, Mr. Riffey was returning to Acme with Spade Trucking's empty truck.

After the accident, Ms. Shaffer filed the instant wrongful death action. Ms. Shaffer alleged that Mr. Riffey's employer, Spade Trucking, was operated and controlled by Acme. After discovery was completed, Acme moved for summary judgment. The trial court found that no material issue of fact existed on the issue of Spade Trucking's status as an independent contractor. Therefore, the circuit court granted summary judgment to Acme.[4] It is from the summary judgment order that Ms. Shaffer now appeals.

## II.

### STANDARD OF REVIEW

■ "A circuit court's entry of summary judgment is reviewed de novo ." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). This Court has made clear that "[a] motion for summary judgment should be granted only when it is clear that there is no

genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Surety Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. pt. 4, *Painter*, 192 W.Va. 189, 451 S.E.2d 755. We have further held that "[t]he question to be decided on a motion for summary judgment is whether there is a genuine issue of material fact and not how that issue should be determined." Syl. pt. 5, *Aetna Cas.*, 148 W.Va. 160, 133 S.E.2d 770. Moreover, we have explained that:

> Roughly stated, a "genuine issue" for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

Syl. pt. 5, *Jividen v. Law*, 194 W.Va. 705, 461 S.E.2d 451 (1995).

■ All reasonable doubts regarding the evidence must be resolved in favor of the non-moving party. "A party who moves for summary judgment has the burden of showing that there is no genuine issue of material fact and any doubt as to the existence of such issue is resolved against the movant for such judgment." Syl. pt. 6, *Aetna Cas.*, 148 W.Va. 160, 133 S.E.2d 770. Thus, in order for summary judgment to be proper, the movant must demonstrate that there is no evidence to support the non-movant's case and "that the evidence is so one-sided that the movant

---

**3.** Criminal charges were filed against Mr. Riffey as a result of the collision.

**4.** Additional facts are provided in connection with our discussion of the particular issues to which they relate.

must prevail as a matter of law." *Tolliver v. The Kroger Co.*, 201 W.Va. 509, 513, 498 S.E.2d 702, 706 (1997). Applying this standard of review to the instant case, we shall examine the facts and application of the law to determine whether there is a genuine issue of fact to be tried by a jury.

### III.

### DISCUSSION

#### A. *Independent Contractor Defense: The Paxton test*

 The threshold inquiry, as was correctly determined by the trial court, is whether Spade Trucking was an independent contractor. We have recognized that " 'the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servant.' " *Pasquale v. Ohio Power Co.*, 187 W.Va. 292, 302, 418 S.E.2d 738, 748 (1992), quoting *Peneschi v. National Steel Corp.*, 170 W.Va. 511, 521, 295 S.E.2d 1, 11 (1982) (quoting Restatement (Second) of Torts § 409 (1976)). We have also recognized that "[t]he defense of 'independent contractor' is one which defendants have long favored as a means of denying liability for acts which are done by those whom they neither control nor have a right to control. However, over the years, the defense has proved to be a slender reed and one which the courts have found difficult to apply." *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 625, 225 S.E.2d 218, 221 (1976) (footnote omitted). This is because, as "we have [previously] acknowledged[,] ... the independent contractor defense is riddled with numerous exceptions that limit its applicability." *Pasquale*, 187 W.Va. at 303, 418 S.E.2d at 749. *See also West v. National Mines Corp.*, 168 W.Va. 578, 588, 285 S.E.2d 670, 677 (1981) ("The general rule that an employer is not liable for the torts of an independent contractor is subject to numerous exceptions"). Moreover, "[w]here the evidence relative to whether a particular person is an independent contractor or an employee is in conflict or, if not in conflict, admits of more than one reasonable inference, an issue is presented for jury

determination." Syl. pt. 1, *Levine v. Peoples Broadcasting Corp.*, 149 W.Va. 256, 140 S.E.2d 438 (1965).

 The seminal case establishing the test for whether an independent contractor relationship exists is *Paxton v. Crabtree*, 184 W.Va. 237, 400 S.E.2d 245 (1990). In syllabus point 5 of *Paxton*, this Court held as follows:

> There are four general factors which bear upon whether a master-servant relationship exists for purposes of the doctrine of respondeat superior: (1) Selection and engagement of the servant; (2) Payment of compensation; (3) Power of dismissal; and (4) Power of control. The first three factors are not essential to the existence of the relationship; the fourth, the power of control, is determinative.

*Accord* Syl. pt. 5, *Teter v. Old Colony Co.*, 190 W.Va. 711, 441 S.E.2d 728 (1994); Syl. pt. 5, *Davis v. Fire Creek Fuel Co.*, 144 W.Va. 537, 109 S.E.2d 144 (1959), *overruled on other grounds by Yates v. Mancari*, 153 W.Va. 350, 168 S.E.2d 746 (1969). "When asserting the independent contractor defense, the employer must first establish that an independent contractor relationship exists." *Pasquale*, 187 W.Va. at 303 n. 16, 418 S.E.2d at 748 n. 16. In syllabus point 1 of *Myers v. Workmen's Compensation Commissioner*, 150 W.Va. 563, 148 S.E.2d 664 (1966), we ruled that "[t]o ascertain whether a workman is an employee or an independent contractor each case must be resolved on its own facts and ordinarily no one feature of the relationship is controlling, but all must be considered together." *Accord* Syl. pt. 2, *Barkley v. Workmen's Comp. Comm'r*, 164 W.Va. 777, 266 S.E.2d 456 (1980). In the instant case, the circuit court found that Spade Trucking was an independent contractor. On appeal, Ms. Shaffer argues that *Paxton's* "power of control" element clearly demonstrates that material issues of fact are in dispute. Therefore, we will not review the first three elements of *Paxton*.[5] Our analysis will focus solely on the forth element of the *Paxton* test, "power of control."

---

**5.** Acme argued in its brief and before this Court that all four elements of *Paxton* were not met.

Ms. Shaffer states that Acme exercised control over Spade Trucking employees. Regarding the element of "control," we have held that "[i]f the right to control or supervise the work in question is retained by the person for whom the work is being done, the person doing the work is an employee and not an independent contractor, and the determining factor in connection with this matter is not the use of such right of control or supervision but the existence thereof in the person for whom the work is being done." Syl. pt. 2, *Spencer v. Travelers Ins. Co.*, 148 W.Va. 111, 133 S.E.2d 735 (1963). *See also* Syl. pt. 2, *Myers v. Workmen's Comp. Comm'r*, 150 W.Va. 563, 148 S.E.2d 664 (1966) ("In determining whether a workman is an employee or an independent contractor, the controlling factor is whether the hiring party retains the right to control and supervise the work to be done"). We have also ruled that the " '[o]ne who would defend against tort liability by contending that the injuries were inflicted by an independent contractor has the burden of establishing that he neither controlled nor had the right to control the work, and if there is a conflict in the evidence and there is sufficient evidence to support a finding of the jury, the determination of whether an independent contractor relationship existed is a question for jury determination.' Syl. Pt. 1, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976)." Syl. pt. 5, *Pasquale v. Ohio Power Co.*, 187 W.Va. 292, 418 S.E.2d 738 (1992).

Ms. Shaffer bases her contention that Acme exercised the power of control over Spade Trucking employees upon the following: (1) Spade Trucking employees arrived routinely at 7:00 in the morning at Acme's facility; (2) Acme directed Spade Trucking employees as to which products to pick-up and deliver; (3) Acme advised Spade Trucking employees when they should load their trucks at the legal weight limit; (4) Acme provided Spade Trucking employees with safety information; (5) Acme required Spade Trucking drivers, when first hired, to undergo safety hazard training; (6) trucks owned by Spade Trucking were loaded by Acme employees; (7) compensation levels for work by Spade Trucking was established by Acme; (8) Spade Trucking employees were required to provide Acme customers with a copy of invoices and to return invoice copies to Acme (9) Acme suggested the routes Spade Trucking employees should take; and (10) when Acme closed its facility each day, the Spade Trucking employees went home.

In contrast, Acme contends that the evidence presented by Ms. Shaffer does not present any disputed genuine issue of material fact, because such evidence does not establish that Acme had the "power of control" over Spade Trucking within the meaning of *Paxton*. Acme asserts that the factors cited by Ms. Shaffer are only coordination mechanisms for Acme's operation. In support of its position, Acme asserts that Spade Trucking was hired to transport stone from its quarry. Spade Trucking was not hired to perform any tasks on Acme's property. Acme loaded the trucks and suggested the most economical routes. Spade Trucking employees were free to take any route desired. It was also contended by Acme that the hazard training it required of Spade Trucking employees was imposed by law. We agree with Acme that the factors argued by Ms. Shaffer to show "power of control," even if disputed, do not amount to showing "power of control" within the meaning of *Paxton*.

The power of control "factor refers to control over the means and method of performing the work." *McDonald v. Hampton Training Sch. for Nurses*, 254 Va. 79, 81, 486 S.E.2d 299, 301 (1997). Moreover, we follow the lead of numerous other courts in holding that " 'an owner who engages an independent contractor to perform a job for him or her may retain broad general power of supervision and control as to the results of the work so as to insure satisfactory performance of the contract—including the right to inspect, to stop the work, to make suggestions or recommendations as to the details of the work, or to prescribe alterations or deviations in the work—without changing the relationship from that of owner and independent contractor, or [changing] the duties arising from that relationship.' " *Indian River Foods Inc. v. Braswell*, 660 So.2d 1093, 1098

(Fla.App. 4 Dist.1995) (emphasis omitted), quoting *City of Miami v. Perez*, 509 So.2d 343, 346 (Fla.App. 3 Dist.1987).[6] *See also Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 193 (5th Cir.1991) (finding that the fact that a principal took an active interest in the safety of the employees of the independent contractor did not itself constitute the direct operational control to subject principal to liability); *Hines v. British Steel Corp.*, 907 F.2d 726, 729–32 (7th Cir.1990) (concluding that advisory suggestions to independent contractor not sufficient exercise of the degree and type of control over those operations necessary to impose a duty of care on the corporation); *Boutwell v. Chevron U.S.A., Inc.*, 864 F.2d 406, 408 (5th Cir.1989) (determining that the presence of, and inspection by, owner's engineer was insufficient to establish owner's control during repair of an oil platform); *Grammer v. Patterson Serv., Inc.*, 860 F.2d 639, 644 (5th Cir.1988) (holding evidence of operational control over a testing procedure was insufficient to create jury question where principal's instructions to the independent contractor were to maximize torque and remove weepholes); *Fireman's Fund Ins. Co. v. Davis*, 37 Cal. App.4th 1432, 1442, 44 Cal.Rptr.2d 546, 551 (1995) (recognizing that an owner may retain a broad general power of supervision and control as to the results of the work so as to insure satisfactory performance of the independent contract); *Hoffnagle v. McDonald's Corp.*, 522 N.W.2d 808, 813–15 (Iowa 1994) (affirming summary judgment where franchisor's authority was no more than authority to insure uniformity in standardization of products and services offered by restaurant); *Schoenbeck v. Du Page Water Comm'n*, 240 Ill.App.3d 1045, 180 Ill.Dec. 624, 607 N.E.2d 693, 697 (1993) (finding evidence did not demonstrate the level of control that warranted imposition of a duty on defendant, since its involvement in the work existed only

to ensure compatibility with its own system and to verify costs, not to oversee or direct the actual construction or the safety of the work site); *Ashby v. Northwestern Pub. Svc. Co.*, 490 N.W.2d 286, 288–89 (S.D.1992) (affirming summary judgment where defendant had retained only general supervisory control to ensure work's completion).

In the instant case, Acme engaged Spade Trucking solely for the purpose of delivering stone. Therefore, to defeat summary judgment, it was necessary for Ms. Shaffer to present relevant evidence involving Acme's control of Spade Trucking's delivery of stone. The only evidence presented by Ms. Shaffer on this issue was Acme's suggestion as to the most economic route to travel by Spade Trucking employees. There was no evidence that Spade Trucking employees were required to follow Acme's suggested travel route. There was also no evidence demonstrating a requirement by Acme as to when Spade Trucking's employees had to return to Acme once deliveries were made. Because Ms. Shaffer failed to sustain her burden, summary judgment on the issue of "power of control" was appropriate.

### B. Illegal or Inherently Dangerous Work

▮▮▮▮ Next, Ms. Shaffer contends that the independent contractor defense is inapplicable because Acme required illegal work to be performed and that such work was inherently dangerous. This Court has recognized that " '[t]he general rule is that where one person has contracted with a competent person to do work, not in itself unlawful or intrinsically dangerous in character, and who exercises no supervision or control over the work contracted for, such person is not liable for the negligence of such independent contractor or his servants in the performance of the work.' Syl. pt. 1, *Chenoweth v. Settle Eng'rs, Inc.*, 151 W.Va. 830, 156 S.E.2d 297 (1967), overruled in part on other grounds by

---

**6.** Similarly, Comment c, Restatement (Second) of Torts § 414 (1965), provides:

In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

*Sanders v. Georgia–Pacific Corp.,* 159 W.Va. 621, 225 S.E.2d 218 (1976)." Syl. pt. 7, *Thomson v. McGinnis,* 195 W.Va. 465, 465 S.E.2d 922 (1995). However, "if such work is intrinsically dangerous in character or is likely to cause injury to another person if proper care should not be taken, such employer cannot escape liability for the negligent performance of such work by delegating it to such independent contractor." Syl. pt. 5, in part, *Law v. Phillips,* 136 W.Va. 761, 68 S.E.2d 452 (1952).

 **1. Inherently dangerous work.** Inherently dangerous work is an exception to the general rule that an employer is not liable for the negligent conduct of an independent contractor. We have noted that "[t]he dangerous work exception to the independent contractor defense is that if the employer of the independent contractor knows the work is hazardous or dangerous, he cannot escape liability." *Pasquale,* 187 W.Va. at 303 n. 18, 418 S.E.2d at 749 n. 18. It is generally recognized that "[w]ork is intrinsically dangerous if the risk of injury involved cannot be eliminated or significantly reduced by taking proper precautions." *Shell Oil Co. v. Meyer,* 705 N.E.2d 962, 978 (Ind.1998). We have stated that "[t]his exception to nonliability emerges from the principal's non-delegable duty to exercise reasonable care when performing the inherently dangerous activity; a duty that the principal cannot discharge by hiring an independent contractor to undertake the activity." *King v. Lens Creek Ltd. Partnership,* 199 W.Va. 136, 143, 483 S.E.2d 265, 271 (1996). "The exception is grounded in a recognition that the possibility of harm to others is so great

when the work activity is inherently dangerous that the law tolerates it only on terms of insuring the public against injury. We impose vicarious liability under these circumstances to insure that the public has legal access to a financially responsible party." *D.B. Griffin Warehouse, Inc. v. Sanders,* 336 Ark. 456, 465, 986 S.W.2d 836, 840–841 (1999). A cause of action based on inherently dangerous work was established in syllabus point 3 of *King v. Lens Creek Ltd. Partnership:*

> To constitute an inherently dangerous activity, the work must be dangerous in and of itself and not dangerous simply because of the negligent performance of the work, and that danger must be naturally apprehended by the parties when they contract. Only then will the work constitute an inherent danger that places a non-delegable duty upon the one ordering it to protect third parties against the resulting injury.[7]

(Footnote added).

 In syllabus point 2 of *King* we also ruled that "[a] principal has a non-delegable duty to exercise reasonable care when performing an inherently dangerous activity; a duty that the principal cannot discharge by hiring an independent contractor to undertake the activity." *See also Peneschi v. National Steel Corp.,* 170 W.Va. 511, 521, 295 S.E.2d 1, 12 (1982) ("the employer of an independent contractor cannot insulate himself from liability to third parties for the consequences of the use of abnormally dangerous instrumentalities by employing an independent contractor").[8]

7. This exception is outlined in Sections 416 and 427 of the Restatement (Second) of Torts (1978) as follows:
> Section 416: One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.
> Section 427: One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal

to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

8. *See also* Syl. pt. 2, *West v. National Mines Corp.,* 168 W.Va. 578, 285 S.E.2d 670 (1981) ("One who employs an independent contractor to do work which the employer knows or has reason to know to be likely to involve the creation of a public or private nuisance, is subject to liability for harm resulting from such nuisance.")

It has been recognized that in defining "inherently dangerous," it is not necessary that the work should involve a major hazard. Rather, "[i]t is sufficient if there is a recognizable and substantial danger inherent in the work, as distinguished from a danger collaterally created by the independent negligence of the contractor, which latter might take place on a job itself involving no inherent danger." *Woodson v. Rowland,* 329 N.C. 330, 351, 407 S.E.2d 222, 235 (1991). Courts have indicated that "[i]nherent danger will be found if an activity, or the manner in which an activity is necessarily conducted, poses an unusual and high risk of harm to those involved in the activity or to other persons encountering the activity or its results." *Enriquez v. Cochran,* 126 N.M. 196, 967 P.2d 1136, 1161 (App.1998).[9] Moreover, inherently dangerous activity must be "of such a nature that in the ordinary course of events its performance would probably, and not merely possibly, cause injury if proper precautions were not taken." *Florida Power and Light Co. v. Price,* 170 So.2d 293, 295 (Fla.1964).

To support its claim that hauling stone was inherently dangerous, Ms. Shaffer contends that Acme regularly overloaded Spade Trucking's trucks. As a result of the regular overloading of Spade Trucking's trucks, the brakes on the truck driven by Mr. Riffey failed. In fact, Ms. Shaffer presented expert testimony that during a six month period prior to the accident, 99.5% of Spade Trucking's trucks that were sent to non-state facilities were overloaded.

Acme asserts that hauling stone is not inherently dangerous, so long as routine driving precautions are taken. In contrast to Ms. Shaffer's claim, Acme presented expert testimony indicating that it did not overload Spade Trucking's trucks. Moreover, Acme argued that the data relied upon by Ms. Shaffer's expert incorrectly assumed the weight capacity of the trucks. Acme also produced evidence from the investigation of the accident which indicated that the cause of the accident was Mr. Riffey's intentional decision not to stop at the stop sign. Acme further points out that at the time of the accident, Mr. Riffey's truck was empty. Acme cites to this Court's decision in *King,* where we held that "the operation of an empty logging truck is not in and of itself dangerous so that harm will likely result if special precautions are not taken[.]" *King,* 199 W.Va. at 142, 483 S.E.2d at 271. The decision in *King* also noted that "[t]he mere negligent operation of an empty logging truck does not create the type of danger constituting inherently dangerous activity for which the principal cannot delegate its duty." *Id.* We believe the decision in *King* properly disposes of this issue. Therefore, summary judgment was proper on this theory of liability.[10] *See Williams v. Tenn. River Pulp & Paper,* 442 So.2d 20 (Ala.1983) (holding that hauling of pulp timber does not constitute peculiar risk of harm); *Morales v. Davis Bros. Constr. Co., Inc.,* 647 So.2d 1302, 1307

9. The *Enriquez* court further explained:

> The 'unusual' prong of the definition addresses the relative rarity of the activity and the concomitant lack of contact or experience with the activity and its dangers by the general public.... The second prong of the criteria involves evaluation of the probability of harm to be expected from the activity.... [T]he risk of harm need not be certain, as could be said of ultrahazardous activities. But, there must be a high risk or probability of harm to participants or passersby in the absence of reasonable precautions. Quantification of the degree of risk or relative probabilities of suffering harm is impossible in the abstract. It can only be done on a case-by-case basis with due regard for the severity of potential harm.

*Enriquez v. Cochran,* 126 N.M. 196, 967 P.2d 1136 1161–1162 (App.1998).

10. In reaching this result, we must note that the truck was not loaded. In *Griffith v. George Transfer & Rigging, Inc.,* 157 W.Va. 316, 323, 201 S.E.2d 281, 286 (1973), we held that the *hauling of freight* upon public highways in high-powered tractor-trailers demonstrates a situation which involves an "unreasonable risk of harm to others." The decision in *Griffith* has been recognized as standing for the proposition that hauling a *loaded* tractor-trailer creates such a risk of harm as to give "rise to an exception to the general rule exonerating a person from the negligence of an independent contractor." *McGlone v. Superior Trucking Co., Inc.,* 178 W.Va. 659, 664, 363 S.E.2d 736, 741 (1987). In *King,* we distinguished *Griffith.* We are not prepared, under the facts of the instant case, to overrule *Griffith,* as it is distinguishable insofar as the instant case involves an empty truck.

(La.Ct.App.1994) ("[W]e cannot say that the hauling of clay-based dirt is an ultra-hazardous or inherently dangerous activity which the exception to the independent contractor rule was intended to cover");*Eckard v. Johnson,* 235 N.C. 538, 541, 70 S.E.2d 488, 491 (1952) ("Nor should the Court characterize the driving of an empty ton and a half-truck along the highway as an activity involving unusual or unreasonable risk of harm to Others"); *Kime v. Hobbs,* 252 Neb. 407, 418, 562 N.W.2d 705, 713 (1997) ("We hold that the transportation of cattle in a tractor-trailer under normal conditions is not an inherently dangerous activity such that it imposes a nondelegable duty on the employer of an independent contractor to ensure that the cattle are transported in a nonnegligent manner"); *Carr v. Merrimack Farmers Exch.,* 101 N.H. 445, 449, 146 A.2d 276, 279 (1958) ("The transportation of baled hay upon a public highway does not fall within this category"); *Norris v. Bryant,* 217 S.C. 389, 60 S.E.2d 844, 848 (1950) ("It is true that a truck negligently operated on the highway is a dangerous instrumentality, but no case has been cited which holds that hauling logs by truck is so inherently dangerous as to make the owner liable for the negligence of an independent contractor"); *Burton–Lingo Co. v. Armstrong,* 116 S.W.2d 791, 796 (Tex.Civ. App.1938) ("Hauling lumber and material with a motortruck is not intrinsically dangerous"); *Mueller v. Luther,* 31 Wis.2d 220, 228, 142 N.W.2d 848, 852–853 (1966) (hauling corn silage was not an inherently dangerous activity). *But see, Doak v. Green,* 677 So.2d 301, 302 (Fla.Dist.Ct.App.1996) ("[I]t was error for the trial court to conclude as a matter of law that hauling logs was not an inherently dangerous activity").

■ **2. Illegal work.** Ms. Shaffer also contends that the work performed by Spade Trucking for Acme was illegal because Acme

routinely overloaded Spade Trucking's trucks. Consequently, Ms. Shaffer argues that the independent contractor defense is not available as the illegal work exception to the independent contractor defense has been recognized by this Court.[11] We explained in *Law v. Phillips,* 136 W.Va. at 771, 68 S.E.2d at 458, that an employer will not be liable for the negligence of an independent contractor where the work is "not in itself unlawful[.]" The issue was stated more directly by this Court over one hundred years ago in syllabus point 5 of *Carrico v. West Virginia Cent. & Pac. Ry. Co.,* 39 W.Va. 86, 19 S.E. 571 (1894):

> The doctrine of the nonliability of one for the negligence of another because the latter is an independent contractor does not apply to relieve the former from liability for the omission of a duty imposed upon him by law in behalf of the safety of the public.

*Accord Sanders v. Georgia–Pacific Corp.,* 159 W.Va. 621, 626, 225 S.E.2d 218, 221 (1976); *Sommerville v. Pennsylvania R.R Co.,* 151 W.Va. 709, 717–718, 155 S.E.2d 865, 870–871 (1967); *Humphries v. Black Betsey Consol. Coal Co.,* 115 W.Va. 768, 771, 178 S.E. 273, 275 (1934). The obvious import of *Carrico* and its progeny is that, where "the work or service to be performed in itself entails the commission of some illegal ... act, the [independent contractor defense] obviously cannot apply, because in such instance the principal and the independent contractor both play an integral part, are both proximate causes, of whatever harm ensues." *Thomas v. Harrah's Vicksburg Corp.,* 734 So.2d 312, 317 (Miss.Ct.App.1999). The illegal work exception to nonliability "requires the knowledge and sanctioning of the illegal act ... by the owner." *Cummings v. Hoosier Marine Properties, Inc.,* 173 Ind.App. 372, 363 N.E.2d 1266, 1277 (1977).

■ Ms. Shaffer argues that by routinely overloading Spade Trucking's trucks

**11.** The illegal work exception to the independent contractor defense is generally recognized by other courts as well. *See Ryobi Die Casting v. Montgomery,* 705 N.E.2d 227, 230 (Ind.App. 1999); *Williamson v. Fowler Toyota, Inc.,* 956 P.2d 858, 860 (Okla.1998); *Hester v. Bandy,* 627 So.2d 833, 841 (Miss.1993); *MacCoy v. Colony House Builders, Inc.,* 239 Va. 64, 69, 387 S.E.2d 760, 763 (1990); *Spell v. Port City Adhesives, Inc.,* 183 Ga.App. 816, 818, 360 S.E.2d 63, 65

(1987); *State v. Schenectady Chems., Inc.,* 117 Misc.2d 960, 459 N.Y.S.2d 971, 979 (Sup.1983); *Davis v. Charter Mortg. Co.,* 385 So.2d 1173, 1174 (Fla.Dist.Ct.App.1980); *Phillips Pipe Line Co. v. McKown,* 580 S.W.2d 435, 438 (Tex.Civ.App. 1979); *Foremost Ins. Co. v. Rollohome Corp.,* 221 N.W.2d 722, 727 (N.D.1974); *Averette v. Travelers Ins. Co.,* 174 So.2d 881, 888 (La.App.1965); *Davis v. Came–Wyman Lumber Co.,* 126 Tenn. 576, 150 S.W. 545, 547 (1912).

with stone Acme violated W. Va.Code § 17C–17-9(b) (1983) (Repl.Vol.1996). That statute generally limits the gross transportation weight of trucks to 80,000 pounds.[12] As a general matter, a violation of a statute may be deemed an illegal act. Our cases have long held that, customarily, a "[v]iolation of a statute is prima facie evidence of negligence." Syl. pt. 1, in part, *Anderson v. Moulder,* 183 W.Va. 77, 394 S.E.2d 61 (1990). Accord Syl. pt. 3, *State ex rel. Castle v. Perry,* 201 W.Va. 90, 491 S.E.2d 760 (1997); Syl. Pt. 1, *Reed v. Phillips,* 192 W.Va. 392, 452 S.E.2d 708 (1994); Syl. pt. 3, *Courtney v. Courtney,* 186 W.Va. 597, 413 S.E.2d 418 (1991). The evidentiary requirements for establishing a prima facie case of negligence were defined in syllabus point 6 of *Morris v. City of Wheeling,* 140 W.Va. 78, 82 S.E.2d 536 (1954), as follows:

> A prima facie case of actionable negligence is that state of facts which will support a jury finding that the defendant was guilty of negligence which was the proximate cause of plaintiff's injuries, that is, it is a case that has proceeded upon sufficient proof to the stage where it must be submitted to a jury and not decided against the plaintiff as a matter of law.

*Accord* Syl. pt. 3, *Anderson v. Moulder,* 183 W.Va. 77, 394 S.E.2d 61 (1990).[13]

■■ The court in *Ryobi Die Casting v. Montgomery,* 705 N.E.2d 227, 230 (Ind.Ct. App.1999) addressed the relationship between a statutory violation and the independent contractor rule as follows:

> It must be regarded as well-settled doctrine, first, that, if one upon whom the

statute imposes a duty, violates that duty, and the violation results in an injury, he is liable, irrespective of all questions of care and prudence; and, second, that it is no defense to prove that the actual breach of law was committed by a person employed by and acting for him, upon whom the duty rests, if the latter knew of and sanctioned, even if he did not direct, the illegal act.

705 N.E.2d at 230, quoting *Prest–O–Lite v. Skeel,* 182 Ind. 593, 106 N.E. 365, 368 (1914).[14] We are persuaded by the reasoning of *Ryobi Die Casting v. Montgomery.* Therefore, we hold that the independent contractor defense is unavailable to a party employing an independent contractor when the party (1) causes unlawful conduct or activity by the independent contractor, or (2) knows of and sanctions the illegal conduct or activity by the independent contractor, and (3) such unlawful conduct or activity is a proximate cause of an injury or harm.

The evidence presented by Ms. Shaffer's expert revealed that Spade Trucking's trucks routinely carried stone loads greater than the 80,000 pound maximum established by statute. Indeed, Acme's own evidence suggests that it frequently loaded Spade Trucking's trucks in excess of 80,000 pounds. Acme nevertheless contends that it is not liable for Spade Trucking's negligence due to a violation of W. Va.Code § 17C–17-9(b) for two reasons: (1) the hauling capacity of Spade Trucking's trucks and (2) W. Va.Code § 17C–17-9(b) is not a safety statute.

■■ (a) **The hauling capacity of Spade Trucking's trucks.** Acme presented evidence to prove that Ms. Shaffer's expert

---

**12.** W. Va.Code § 17C–17-9(b) provides that "no vehicle or combination of vehicles shall have a gross weight, including the load, in excess of sixty-five thousand pounds, except that the maximum gross weight of vehicles operating on the national system of interstate and defense highways and any highway providing reasonable access to and from terminals and facilities for food, fuel, repairs and rest within the State shall not be in excess of eighty thousand pounds and except as otherwise provided in this article."

**13.** *See also,* Syl. Pt. 3, *Waugh v. Traxler,* 186 W.Va. 355, 412 S.E.2d 756 (1991) ("The prima facie presumption of negligence created upon violation of a traffic statute or safety regulation may be rebutted by evidence tending to show

that the person violating the statute did what might reasonably have been expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law").

**14.** The Restatement (Second) of Torts § 424 (1968) states:

> One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions.

incorrectly assumed that Spade Trucking's trucks had only a capacity to haul 80,000 pounds. In contrast, Acme produced evidence that Spade Trucking's trucks had a hauling capacity of 90,000 pounds and that none of Spade Trucking's trucks ever carried a load greater than 90,000 pounds. Therefore, Acme contends, W. Va.Code § 17C–17–9(b) was not violated.

Acme's hauling capacity argument is obviously an attempt to circumvent the statute. Acme asserts that while the statute has a general limitation of 80,000 pounds, such a statutory limitation is only for trucks with the capacity to carry 80,000 pounds. Thus, according to Acme, if a truck has the capacity to carry more than 80,000 pounds, the statute does not restrict carrying a weight greater than 80,000 pounds. This argument is illogical, absent an applicable statutory exception to W. Va.Code § 17C–17–9(b). Taken to its fullest extent, Acme's reading of the statute would mean that, for example, although a highway sign has a speed limit of 65 miles per hour, if a person's vehicle can operate greater than 65 miles per hour, the speed limitation has no application. We are unpersuaded by Acme's argument that W. Va.Code § 17C–17–9(b) has no application to this case because of the hauling capacity of Spade Trucking's trucks.

**(b) W. Va.Code § 17C–17–9(b) as a safety statute.** Acme finally contends, without controlling authority, that the requirement of W. Va.Code § 17C–17–9(b) is inapplicable to the case because it is not a "safety statute." Instead, Acme argues that the statute is designed to protect the highways from the wear and tear of heavy vehicles.[15] This argument is without merit. We hold that "[w]hen a statute imposes a duty on a person for the protection of others ... it is a public safety statute and a violation of such a statute is [prima facie evidence of] negligence ... unless the statute says otherwise. A member of a class protected by a public safety statute has a claim against anyone who violates such a statute when the violation is a proximate cause of injury to the claimant." *Hart v. Ivey*, 332 N.C. 299, 303, 420 S.E.2d 174, 177 (1992).

This Court has previously held that the State's motor vehicle statutes are public safety statutes designed for " 'the protection of the public highways, *and the promotion of safety in their use.*' " *State ex rel. Dep't. of Transp. v. Sommerville*, 186 W.Va. 271, 273, 412 S.E.2d 269, 271 (1991), quoting *State v. Chittester*, 139 W.Va. 268, 272, 79 S.E.2d 845, 847 (1954) (emphasis added).[16] Indeed, we expressly held in syllabus point 11 of *Price v. Halstead*, 177 W.Va. 592, 355 S.E.2d 380 (1987), that "[t]he violation of a provision of our motor vehicle statutes is prima facie evidence of negligence."[17] *See Wheeler v. Murphy*, 192 W.Va. 325, 336 n. 5, 452 S.E.2d 416, 427 n. 5 (1994); *Craig v. Schell*, 293 Mont. 323, 975 P.2d 820, 825 (1999) ("the violation of a statute enacted for the safety of the public, including one which

---

15. The circuit court's order acknowledged this issue; but made no specific findings regarding its resolution. The order stated, without more: "And we have the dispute there as to the amount of overloading ... or whether the standards with respect to gross vehicle rating apply."

16. In order to fully understand W. Va.Code § 17C–17–9(b), it must be viewed in conjunction with other related statutes. A cardinal rule of statutory construction is that "[s]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. Pt. 3, *Smith v. Workmen's Comp. Comm'r.*, 159 W.Va. 108, 219 S.E.2d 361 (1975). W. Va.Code § 17C–17–9(b) is a part of Chapter 17C. Chapter 17C is titled "Traffic Regulations and Laws of the Road," and contains 25 Articles that address all aspects of matters pertaining to the safe operation of motor vehicles. Areas covered by Chapter 17C include but are not limited to: DUI, speed restrictions, serious

traffic offenses, accidents, vehicle inspection, and vehicle equipment.

17. W. Va.Code § 55–7–9 (1923) (Repl.Vol.1994) expressly authorizes civil liability based on a violation of a statute:

Any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of such damages.

*Accord Yourtee v. Hubbard*, 196 W.Va. 683, 687, 474 S.E.2d 613, 617 (1996). This statute has been interpreted as providing a general statement of liability for violating a statute. In syllabus point 2 of *Reed v. Phillips*, 192 W.Va. 392, 452 S.E.2d 708 (1994), this Court restated the guidelines to determine whether a violation of a statute gives rise to a private cause of action:

regulates the operation of motor vehicles on the public highways, is negligence per se"); *Totsky v. Riteway Bus Svc., Inc.*, 220 Wis.2d 889, 899, 584 N.W.2d 188, 192 (1998) (holding violation of a safety statute constitutes negligence per se).[18]

 In summary, we hold that W. Va.Code § 17C–17–9(b) is a public safety statute for which a private cause of action may be maintained for injury or harm resulting from its violation. Our holding on this issue does not, in and of itself, resolve the issue of summary judgment. As previously indicated, Ms. Shaffer presented evidence that Acme routinely overloaded Spade Trucking's trucks. Acme did not present evidence to contradict the issue and, in fact, presented its own evidence which suggested it knowingly overloaded Spade Trucking's trucks. This showing precluded application of the independent contractor defense, because such conduct was unlawful insofar as Acme knew the trucks would be placed on the State's highways in violation of W. Va. Code § 17C–17–9(b). There is a plausible connection in this case between Acme's overloading of the trucks and the alleged brake failure of the truck involved in the accident. It is this connection between the overloading and purported brake failure that we find precluded summary judgment. Therefore, we now turn to the issue of the alleged brake failure.

> The following is the appropriate test to determine when a State statute gives rise by implication to a private cause of action: (1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must be given to legislative intent, express or implied, to determine whether a private cause of action was intended; (3) an analysis must be made of whether a private cause of action is consistent with the underlying purposes of the legislative scheme; and (4) such private cause of action must not intrude into an area delegated exclusively to the federal government.
>
> As indicated in the body of this opinion, prior decisions of this Court have determined that civil liability may be imposed from a violation of our motor vehicle statute.

**18.** *See also,* Syl. pt. 5, *Reed v. Phillips,* 192 W.Va. 392, 452 S.E.2d 708 ("In light of W. Va.Code § 37–6–30 (1985) and the rules and regulations promulgated by the West Virginia State Fire Commission pursuant to W. Va.Code § 29–3–5 (1992), the absence of a smoke detector in a one-

## C. Defective Brakes

 Ms. Shaffer presented various arguments in her brief regarding the issue of the truck's defective brakes. To dispose of this matter, we need only examine one of the defective brake theories asserted by Ms. Shaffer.[19]

During summary judgment, Ms. Shaffer presented expert testimony by Dr. Russell Rex Haynes, Ph.D., on the issue of defective brakes. Dr. Haynes opined that the truck overloading by Acme may have led to a defective brake system on the truck involved in the accident. It was Dr. Haynes' opinion that the defective brake system affected Mr. Riffey's ability to stop the truck which would have lessened the severity of the collision. Dr. Haynes was of the opinion that the defective brake system caused the *stopping power* of the truck to be reduced by approximately one-half.

Acme countered the testimony of Dr. Haynes on two fronts. First, Acme argued that Dr. Haynes' opinion was purely speculative. Acme contends that Dr. Haynes opined that there were three possible causes for the defective brake system and that truck overloading was only one possibility. Second, Acme presented testimony from Public Service Commission inspector, Lee R. Dean, who opined that there was no defect in Mr. Riffey's brake system before the accident.

or two-family dwelling constitutes prima facie evidence of negligence on the part of a landlord if the injury proximately flows from the noncompliance"); Syl. Pt. 1, in part, *Miller v. Warren,* 182 W.Va. 560, 390 S.E.2d 207 (1990) ("Failure to comply with a fire code or similar set of regulations constitutes prima facie negligence, if an injury proximately flows from a noncompliance and the injury *is* of the *sort* the regulation was intended to prevent").

**19.** Ms. Shaffer argued that under federal regulation 30 C.F.R. § 56.14100, Acme had a duty to inspect the brakes of the truck driven by Mr. Riffey. We have examined the regulation cited by Ms. Shaffer and find it inapplicable to the vehicle in this case, because the regulation concerns specific mining equipment. Likewise, Acme cited a state regulation, 56 C.S.R. § 3–42.1, as imposing an inspection duty on the operator of a vehicle. We have examined the state regulation and find that it is not applicable to the vehicle in this case, because the regulation also concerns specific mining equipment.

Mr. Dean further testified that, while there may have been some damage to the brake system, the damage may have been caused by the accident.

We believe the testimony of Dr. Haynes, the interpretation Acme seeks to place on that testimony, and the testimony of Mr. Dean, create material issues of fact in dispute. Summary judgment should be granted only where material issues of fact are not in dispute.[20] We have previously ruled that "[s]ummary judgment should be denied 'even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom.'" *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 59, 459 S.E.2d 329, 336 (1995), quoting *Pierce v. Ford Motor Co.*, 190 F.2d 910, 915 (4th Cir.1951).

## IV.

### CONCLUSION

In view of the foregoing, we find the circuit court correctly determined that there was no genuine issue of material fact regarding the question of whether Spade Trucking was an independent contractor of Acme under the *Paxton* test. Nevertheless, we further conclude, however, that summary judgment was inappropriate, because Ms. Shaffer established an exception to the independent contractor defense. That exception is the illegal work exception to the independent contractor defense. Moreover, material issues of fact were in dispute as to whether the brake system on the truck involved in the accident was defective due to overloading of stone by Acme.

Affirmed in part, reversed in part and remanded.

Judge ROBERT B. STONE, sitting by temporary assignment.

Justice SCOTT did not participate.

---

**20.** In Ms. Shaffer's reply brief the issue is raised for the first time that Acme was negligent in its selection of Spade Trucking and Mr. Riffey. Although this issue was asserted in Ms. Shaffer's complaint, it was not addressed by the circuit court nor raised by Ms. Shaffer in her original brief. This Court recognized a cause of action for negligent hiring of an independent contractor in *Thomson v. McGinnis*, 195 W.Va. 465, 465 S.E.2d 922 (1995). *See also Sipple v. Starr*, 205 W.Va. 717, 520 S.E.2d 884 (1999) (Davis, J., dissenting); *King v. Lens Creek Ltd. Partnership*, 199 W.Va. 136, 140, 483 S.E.2d 265, 269 (1996). Our general rule is that nonjurisdictional questions not raised at the circuit court level, but raised for the first time on appeal, will not be considered. *Whitlow v. Board of Educ. of Kana-*

*wha County*, 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993). We noted in *Whitlow:*

> The rationale behind this rule is that when an issue has not been raised below, the facts underlying that issue will not have been developed in such a way so that a disposition can be made on appeal. Moreover, we consider the element of fairness. When a case has proceeded to its ultimate resolution below, it is manifestly unfair for a party to raise new issues on appeal. Finally, there is also a need to have the issue refined, developed, and adjudicated by the trial court, so that we have the benefit of its wisdom.

*Whitlow*, 190 W.Va. at 226, 438 S.E.2d at 18. We, therefore, decline to address this assignment of error.