# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Jamie Turner,**
**Petitioner Below, Petitioner**

**FILED**

**April 10, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 15-0987** (Cabell County 10-C-713)

**David Ballard, Warden,**
**Mount Olive Correctional Complex,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Jamie Turner, by counsel James R. Mills, appeals the Circuit Court of Cabell County's September 15, 2015, order denying his amended petition for writ of habeas corpus. Respondent David Ballard, Warden, by counsel Nic Dalton, filed a response. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in denying his amended habeas petition on the grounds of ineffective assistance of trial counsel, ineffective assistance of habeas and appellate counsel, and a more severe sentence than expected. Petitioner also contends that the circuit court failed to consider several grounds for relief that were properly raised in the underlying proceeding.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2006, the Cabell County grand jury indicted petitioner and his co-defendant on three counts of robbery and one count of fleeing an officer. These charges stemmed from an incident in which petitioner and his co-defendant allegedly robbed three individuals at gunpoint as the individuals walked back to their fraternity house.[1] The following year, a jury found petitioner guilty on all four counts. Thereafter, by order entered on October 12, 2007, the circuit court sentenced petitioner to a cumulative term of incarceration of sixty years for all three robbery counts and a consecutive term of incarceration of six months for fleeing an officer.

---

[1]Two of the alleged victims were the sons of then-prosecuting attorney Christopher Chiles. However, by order entered July 11, 2014, Philip W. Morrison was appointed as a special prosecuting attorney to handle the criminal proceedings.

1

In 2010, petitioner filed a direct appeal with this Court, which was consolidated with his co-defendant's direct appeal. On appeal, petitioner argued that the circuit court "coerced a guilty verdict by pressuring the jury to reach its verdict [and] that one of th[e] robbery convictions was improper because no money or personal property was stolen[.]" After oral argument, this Court affirmed petitioner's convictions by decision entered on June 3, 2010. *See State v. Pannell*, 225 W.Va. 743, 696 S.E.2d 45 (2010). Shortly thereafter, petitioner filed a petition for writ of habeas corpus and a motion for appointment of counsel.

In 2014, petitioner filed an amended petition for writ of habeas corpus and a *Losh List*.[2] Petitioner asserted twenty-six separate grounds for habeas relief. However, petitioner set forth only three independent grounds for relief in his memorandum of law in support of his amended petition for writ of habeas corpus: (1) ineffective assistance of counsel, (2) irregularities in his arrest, and (3) a more severe sentence than expected. According to petitioner, his trial counsel was ineffective for the following reasons: (1) counsel failed to move for a change of venue or to recuse the sitting judges of Cabell County; (2) counsel failed to file a motion to test any of the physical evidence for DNA; (3) counsel failed to discuss the charges with the lawyer that represented petitioner during the preliminary hearing; (4) counsel failed to file a motion to sever petitioner's trial; and (5) counsel improperly informed petitioner about his parole eligibility. The circuit court conducted an omnibus evidentiary hearing during which petitioner's trial counsel testified. After considering the parties arguments, the circuit court denied petitioner habeas relief by order entered on September 15, 2015. This appeal followed.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

On appeal to this Court, petitioner argues that the circuit court failed to consider several grounds for relief that were properly raised in the underlying habeas proceeding and that he received ineffective assistance of trial and appellate counsel.[3] The Court, however, does not

---

[2]The checklist of grounds typically used in habeas corpus proceedings, commonly known as "the Losh list," originates from *Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981).

[3]On appeal to this Court, petitioner also raised, for the first time, that his trial counsel was ineffective for the following reasons: (1) failing to object to statements that the victims were sons of the prosecuting attorney; (2) failing to advise that a finding of a firearm could affect his parole eligibility; (3) failing to object when the prosecutor conflated the reasonable doubt standard; and

(continued . . .)

agree. Upon our review and consideration of the circuit court's order, the parties' arguments, and the record submitted on appeal, we find no error or abuse of discretion by the circuit court. Our review of the record supports the circuit court's decision to deny petitioner post-conviction habeas corpus relief based on these alleged errors, which were also argued below. Indeed, the circuit court's order includes findings and conclusions as to the assignments of error raised on appeal. Given our conclusion that the circuit court's order and the record before us reflect no clear error or abuse of discretion, we hereby adopt and incorporate the circuit court's findings and conclusions as they relate to petitioner's assignments of error raised herein and direct the Clerk to attach a copy of the circuit court's September 14, 2015, "Order Denying Writ of Habeas Corpus Following Omnibus Hearing" to this memorandum decision.

Petitioner also alleges that he received ineffective assistance of habeas counsel because counsel failed to set forth arguments for all of petitioner's alleged grounds for habeas relief, which include failing to make a motion for post-conviction DNA testing. However, we decline to address these issues on appeal. This Court has held:

> It is the extremely rare case when this Court will find ineffective assistance of counsel . . . . The prudent defense counsel first develops the record regarding ineffective assistance of counsel in a habeas corpus proceeding before the lower court, and may then appeal if such relief is denied. This Court may then have a fully developed record on this issue upon which to more thoroughly review an ineffective assistance of counsel claim.

Syl. Pt. 10, in part, *State v. Triplett*, 187 W.Va. 760, 421 S.E. 2d 511 (1992). Petitioner is raising habeas counsel's alleged ineffective assistance for the first time on appeal. If petitioner continues to believe that prior appellate and habeas counsel were ineffective, the preferred way of raising these ineffective assistance counsel claims is to file a subsequent petition for a writ of habeas corpus raising these issues in the court below. *See* Syl. Pt. 4, *Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981) (While a prior habeas corpus hearing is res judicata as to all matters either raised or should have been raised at the habeas corpus hearing, "an applicant may still petition the court on the following grounds: ineffective assistance of counsel at the omnibus habeas corpus hearing.").[4]

---

(4) improperly advising petitioner that pleading guilty to a pending drug charge in Logan county would not affect his sentence. However, the Court finds that neither petitioner's amended petition for writ of habeas corpus, nor his memorandum in support of the amended petition addressed this alleged errors. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W.Va. Dep't of Motor Vehicles*, 223 W.Va. 818, 821, 679 S.E.2d 650, 653 (2009). Accordingly, the Court declines to address these assignments of error on appeal.

[4]We express no opinion as to the merits of any subsequent claim for ineffective assistance of habeas counsel.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 10, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Elizabeth D. Walker

**DISSENTING:**

Justice Menis E. Ketchum

IN THE CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

FILED

2015 SEP 14 AM 4: 15

J.E. HOOD
CIRCUIT CLERK
CABELL CO. WV

JAMIE TURNER,

        Petitioner,

vs.

                              **CIVIL ACTION NO. 10-C-713**
                              **JUDGE ALFRED E. FERGUSON**
                              **UNDERLYING INDICTMENT 06-F-291**

DAVID BALLARD, Warden,
MT. OLIVE CORRECTIONAL CENTER

        Respondent.

**ORDER DENYING WRIT OF HABEAS CORPUS FOLLOWING OMNIBUS HEARING**

This matter came before the Court on the Petition for Post-Conviction Habeas Corpus

filed by the Petitioner, Jamie Turner, *pro se,*[1] on September 30, 2010. Counsel was appointed on

December 14, 2010. Following several counsel changes, former attorney Jason Goad filed

Petitioner's Amended Petition, Supporting Memorandum and *Losh*[2] Checklist on May 29, 2014.

Present counsel, Mark Hobbs, filed a Notice of Appearance to represent the Petitioner herein on

September 22, 2014.

Two of the three victims were the children of the Honorable Christopher D. Chiles[3], and

as such, a special prosecuting attorney was appointed for all phases of the underlying felony

indictment and habeas corpus proceeding. As such, by Order dated July 11, 2014, Special

Prosecuting Attorney, Philip W. Morrison, II was appointed to represent the State of West

Virginia.

---

[1] Upon review of Petitioner's filing, the Court appointed counsel pursuant to Rule 4(b) of the Rules Governing Post-Conviction Habeas Corpus Proceedings (R.H.C.)
[2] *Losh v. McKenzie* 166 W. Va. 762, 277 S.E.2d 606, 610-12 (1981)
[3] Judge Chiles was then serving as the Cabell County Prosecuting Attorney.

*Appendix - 1*

The Court takes judicial notice of all proceedings and the record in the underlying case, to wit: Indictment 06-F-291. Furthermore, the Circuit Court of Cabell County, West Virginia, has proper jurisdiction in this matter pursuant to W.Va. Code § 53–4A–1–13, *et seq.*

On May 29, 2015, came the Petitioner in person, and by counsel, Mark Hobbs, and also came the State of West Virginia by its Special Prosecuting Attorney, Philip W. Morrison, II, for purposes of an Omnibus Habeas Corpus Hearing in the above styled action. The Court then set a schedule for further memoranda, replies thereto and proposed findings of fact and conclusions of law.

After reviewing the pending petition and response, hearing testimony in the Omnibus hearing, reviewing supplemental memoranda, proposed findings of fact and conclusions of law, conducting a thorough examination of the record of the felony case and the current case, and consulting pertinent legal authority, the Court concludes that the Petitioner is not entitled to a writ of habeas corpus. Accordingly, the Court hereby **ORDERS** that the petition be **DENIED.**

## FINDINGS OF FACT

The following recitation was taken from the West Virginia Supreme Court of Appeals factual recitation in the opinion in *State v. Panell and Turner*, 225 W.Va. 743 (2010) at 745, 747 and is hereby found to be pertinent to the instant proceeding:

> "On July 12, 2006, three individuals were robbed at gunpoint around 3 a.m. as they walked back to their fraternity house in Huntington, West Virginia. The victims, Christopher Chiles, Andrew Chiles, and Marco Cipriani, had been at a local bar celebrating the twenty-first birthday of Andrew Chiles. As they approached an intersection while walking eastbound on Fifth Avenue, they saw an African–American male approximately five feet eleven inches tall jumping up and down in an excited manner.3 This man was originally described as being dressed in all black and having panty hose over his face but at trial, two of the victims testified that he had a green "Du–Rag" on his head.
>
> Just then, a masked individual rounded the corner, pointed a handgun

2

at them, and demanded "Give me everything you have got." The three alleged victims dropped their wallets or the cash they had on them on the ground. The gun wielding perpetrator then ordered the victims to 'take off', and they ran to their fraternity house and called 911.

A few minutes after the 911 call was made, a patrol officer saw two men who matched the description of the perpetrators (African–American males dressed in all black with pantyhose over their faces) in a red car traveling away from the area of the robbery. Officer Sid Hinchman testified that he turned around to follow the vehicle after the men, who were wearing objects on their heads that did not appear to be hats, turned their heads in an exaggerated fashion and then immediately made a left turn onto Thirteenth Street. When Officer Hinchman turned his cruiser around, he saw the same red vehicle parked with both doors open and no passengers in sight. When he approached the car, a red Ford Escort, Officer Hinchman noticed that the engine was still running. In searching the vehicle, he discovered a black semi-automatic handgun with a fully-loaded clip. A subsequent inspection of the car revealed a dark piece of cloth with slits in it on the driver's side floorboard by the door and a green cloth described as a "du-rag" lying on the floorboard on the passenger side of the vehicle.

Having heard the dispatch put out after the 911 call, Officer Scott Ballou of the Marshall University Police Department observed an African–American in a dark shirt and jeans on the railroad tracks. Because he matched the description from the dispatch, Officer Ballou stopped James Turner and secured him with handcuffs. Patrolman Eddie Prichard, Jr., of the Huntington Police Department traveled on foot to Eighth Avenue after hearing Sergeant John Ellis state on the radio that two African–Americans were running east on the railroad tracks. Officer Prichard saw an African–American male in a white tee-shirt8 and dark jeans jump from an underpass to a sidewalk heading south towards him. After directing that individual, Roshawn Pannell, to stop, he took custody of him. No money was found on Mr. Pannell, but three wads of money were recovered from Mr. Turner's pockets. Later that same day when a show-up was held, the alleged victims were unable to positively identify their assailants.

When this matter went to trial on August 1, 2007, the State sought to prove its case with the testimony of the alleged victims and the various city and university police officers who were involved in the case. David Castle, a crime scene investigator for the Huntington Police Department, offered

3

*Appendix-3*

forensic testimony at the trial. He testified that while the .45 caliber High Point gun found in the car did not reveal any identifiable fingerprints, Mr. Pannell's fingerprints were discovered on a Lipton Tea bottle discovered in the red Ford Escort and Mr. Turner's fingerprint was identified on a 7–Eleven plastic bag also found in the car. Mr. Pannell's fingerprint was also found on the rearview mirror.

The only witness the defense offered at trial was Mr. Turner. According to Mr. Turner, Mr. Pannell picked him up in the red Ford Escort shortly after Mr. Turner left a Huntington nightclub. In explanation of why Appellants turned their heads when Officer Hinchman drove by, Mr. Turner testified that it was to avoid the bright lights of the patrol car. When Appellants saw the patrol car make a U-turn shortly after it passed them, Mr. Turner stated that they exited the vehicle and fled on foot until their capture. The reason for their flight, according to Mr. Turner, was an outstanding warrant for drug-related charges pending against Mr. Turner. Mr. Turner testified that he had known Mr. Pannell for about one year and that Mr. Pannell had just been released from jail on the day prior to the alleged robbery. Maintaining that he had no involvement in the subject robbery, Mr. Turner also refused to implicate Mr. Pannell in the robbery.

On Friday, August 3, 2007, the jury began its deliberations around 1:05 p.m. After picking a foreperson, the jury requested a lunch break. Following that break, the deliberations resumed at 2 p.m. The jury informed the trial court at 4:49 p.m. that they were not making progress. They inquired as to how long they could deliberate that day and also whether they could continue their deliberations on Monday. Although the trial judge indicated to the jury that they could deliberate as long as they wished on Friday, he informed them that he was leaving on vacation the next day. The judge remarked additionally that one of the jurors, James Blankenship, was scheduled to depart for vacation on Saturday. The trial judge suggested that the jury take a dinner break and then continue their deliberations. At 5:07 p.m., the trial judge gave a modified Allen charge and the jury resumed its deliberations at 5:13 p.m. The jury returned its verdict at 7:15 p.m., convicting both Appellants of all charges. The trial court then required the jury to answer an interrogatory concerning whether Mr. Turner had used a firearm in the commission of the crime. The jury quickly answered the interrogatory in the affirmative.

Appellants were both sentenced to concurrent sentences of sixty years

4  *Appendix-4*

in the state penitentiary for robbery plus a consecutive six-month sentence in the regional jail for fleeing. Separate motions for new trials were filed by Appellants' trial counsel. After those motions were denied, Appellants filed pro se notices of appeal on November 8, 2007. Counsel was later appointed to help assist Mr. Turner and Mr. Pannell with the filing of their appellate petitions. Present defense counsel filed motions for reconsideration of sentence on behalf of their respective clients, and the trial court denied those motions on March 17, 2008."

Kerry Nessel represented the Petitioner in a consolidated appeal[4] where the conviction was affirmed.

## PETITIONER'S GROUNDS FOR HABEAS CORPUS RELIEF

Petitioner asserted twenty-six grounds for relief in his *Losh* Checklist:

1) Statute under which the conviction was obtained;

2) Prejudicial pretrial publicity;

3) Failure of counsel to take an appeal;

4) Suppression of helpful evidence by the prosecutor;

5) State's knowing use of perjured testimony;

6) Ineffective assistance of counsel;

7) Irregularities in arrest;

8) Irregularities in arraignment;

9) Challenges to the Grand Jury composition or procedures;

10) Defects in the indictment;

11) Improper venue;

12) Refusal of continuance;

13) Prejudicial joinder of defendants;

14) Nondisclosure of Grand Jury minutes;

---

[4] *State v. Panell and Turner*, 225 W.Va. 743 (2010)

*Appendix -5*

15) Refusal to turn over witness notes after witness has testified;

16) Constitutional errors in evidentiary rulings;

17) Instructions to the jury;

18) Prejudicial statements by trial judge;

19) Prejudicial statements by the prosecutor;

20) Sufficiency of the evidence;

21) Acquittal of co-defendant on same charge;

22) Improper communication between prosecutor and witness or jury;

23) Severer sentence than expected;

24) Excessive sentence;

25) Mistaken advice of counsel as to parole eligibility; and

26) Amount of time served on sentence, credit for time served

## CONCLUSIONS OF LAW

1.  The applicable statutes for the issuance of a writ of habeas corpus are W. Va. Code § 53–4A–1, *et seq*. and the writs are "civil in character and shall under no circumstances be regarded as criminal proceedings or criminal case."

2.  "A habeas corpus petitioner is entitled to careful consideration of his grounds for relief, and the Court before which the writ is made returnable has a duty to provide whatever facilities and procedures are necessary to afford the petitioner an adequate opportunity to demonstrate his entitlement to relief" *Gibson v. Dale,* 173 W. Va. 681 (1984).

3.  Only constitutional or jurisdictional defects are cognizable grounds in post-conviction habeas corpus proceedings. Syl. pt. 4, *State ex rel. McMannis v. Mohn,* 163 W.Va. 129, 137 (1979).

*Appendix - 6*

6

4. Furthermore, claims that have been "previously and finally adjudicated," either on direct appeal or in a previous post-conviction habeas proceeding, may not form the basis for habeas relief. W.Va. Code § 53–4A–1(b); *See Also, Bowman v. Leverette,* 169 W.Va. 589, 591 (1982). However, claims that were merely raised in a petition for appeal that was refused are not precluded. *Smith v. Hedrick,* 181 W.Va. 394, 395 (1989).

5. "[T]he burden of proof rests on the petitioner to rebut the presumption that he intelligently and knowingly waived any contention for relief which he could have advanced on direct appeal" *Losh v. McKenzie,* 166 W. Va. 762 (1981).

6. "Waiver" is intentional relinquishment or abandonment of a known right; when there has been such knowing waiver, there is no error and inquiry as to effect of deviation from rule of law need not be determined. *State v. Crabtree,* Syl. Pt. 20, 198 W. Va. 620 (W.Va.1996).

7. To prevail in post-conviction habeas corpus proceedings, the "petitioner has the burden of proving by a preponderance of the evidence the allegations contained in his petition or affidavit which would warrant his release." *State ex rel. Scott v. Boyles,* Syl. Pt. 1, 150 W. Va. 453 (W.Va.1966).

8. "[P]ost-conviction proceedings are not a venue for a petitioner to retry his case under different theories than those advanced at trial." *State ex rel. Rickey v. Bill,* 216 W. Va. 155, 165 (W.Va.2004)

The Court has concluded the Petitioner has failed to establish a basis for his contentions that he was denied Constitutional rights on any of the grounds asserted in the *Losh* Checklist. The reason for this conclusion and the findings of facts and legal authority upon which the conclusion is based is set forth below.

Appendix - 7

## Review of Grounds Previously and Finally Adjudicated
### (Grounds #16, #17, and #18)

Several of the grounds Petitioner asserts in his *Losh* Checklist were addressed in the Petitioner's direct appeal[5]. In that matter, Petitioner alleged this Court improperly instructed the jury by giving a "modified Allen charge" thereby coercing the jury into a guilty verdict and denying him his right to a fair trial. The West Virginia Supreme Court rejected this assertion. Accordingly, the Court **FINDS** and **CONCLUDES** that "Constitutional Errors in Evidentiary Rulings", "Instructions to the Jury" and "Prejudicial Statements by the Trial Judge" has been previously and finally adjudicated and relief is hereby denied.

### Ineffective Assistance of Counsel, Prejudicial Pretrial Publicity, Improper Venue, Prejudicial Joinder of Defendants, Failure of Counsel to Take an Appeal
### (Grounds #6, #2, #11, #13, and #3)

"[T]he right to effective assistance of counsel is recognized not only for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *United States v. Cronic*, 466 U.S. 648 (1984). In West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and adopted by our state in *State v. Miller*, 194 W. Va. 3 (W.Va.1995).

The first prong of the *Strickland/Miller* test requires that a petitioner "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. Then, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Strickland*, 466 U.S. at 690. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Miller*, 194 W. Va. at 15, quoting

---

[5] *State v. Panell and Turner*, 225 W.Va. 743 (2010)

8

*Appendix – 8*

*Strickland,* 466 U.S. at 689. "In other words, we always should presume strongly that counsel's performance was reasonable and adequate.

A defendant seeking to rebut this strong presumption of effectiveness bears a difficult burden because constitutionally acceptable performance is not defined narrowly and encompasses a 'wide range.' The test of ineffectiveness has little or nothing to do with what the *best* lawyers would have done. Nor is the test even what most good lawyers would have done. We only ask whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at the time, in fact, worked adequately" *Miller,* 194 W. Va. at 16. In giving meaning to the requirement [of effective counsel], we must take its purpose—to ensure a fair trial—as the guide.

The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland,* 466 U.S. at 686. "In deciding ineffective assistance claims, a court need not address both prongs of the *Strickland/Miller* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test." *State ex rel. Daniel v. Legursky,* 195 W. Va. 314, 321 (W.Va.1995). "Failure to meet the burden of proof imposed by either part of the *Strickland/Miller* test is fatal to a habeas petitioner's claim." *State ex ret Vernatter v. Warden, West Virginia Penitentiary,* 207 W. Va. 11 (W.Va.1999), citing *Legursky,* 195 W. Va. at 465.

Petitioner contends that trail counsel, William Harding, was ineffective in his representation of Petitioner, *"Losh"* checklist assertion number #6, in that he did not (1) move for a change of venue; (2) move to disqualify all the judiciary of the Sixth Circuit; (3) did not

9

*Appendix - 9*

discuss the case with the lawyer who represented Petitioner at the preliminary hearing in this matter; (4) move for separate trial from co-defendant, Roshawn Pannell; (5) move to have DNA testing performed on certain evidentiary items that were introduced against him and his co-defendant, Roshawn Pannell, during their joint trial in the matter; and (6) that Appellate Counsel, Kerry Nessel, was ineffective in that he agreed to submit the matter 'on briefs' to the Supreme Court of Appeals thereby eschewing oral argument.

Review of the record reveals that trial counsel employed a general defense. His client's fingerprints were found in the vehicle along with items used in the robbery. Furthermore, Petitioner's testimony at trial confirmed the State's proof that he was in the vehicle and that he jumped out and fled down the railroad tracks because, as he put it, "he had outstanding warrants".

Petitioner offers no evidence that his case was subject to intense or prejudicial media coverage nor does he point to any place in the record during jury selection that the jury was influenced by or had even seen any media accounts about the case. (Trial Transcript, pp. 20 - 78). Only three prospective jurors, Cline, Moss and Blank, claimed to know then Prosecuting Attorney Chris Chiles. (Trial Transcript, pp. 54, 55). Of those three prospective jurors, Moss was excused for cause after in camera *voir dire* by the trial court and the other two were struck in peremptory strikes. (Trial Transcript, pp. 57, 77 - 78). The record shows that the parties were able to select a jury free from bias without any difficulty and therefore Petitioner fails to demonstrate any basis for a motion for a change of venue. Accordingly, the Court **FINDS** and **CONCLUDES** that Petitioner has failed to prove "Prejudicial Pretrial Publicity" and "Improper Venue" by a preponderance of the evidence and the claim is hereby denied.

*Appendix - 10*

10

Given this finding the Court cannot reasonably conclude that trial counsel's performance was deficient under an objective standard of reasonableness on the basis of the lack of a motion to change venue. Further, no evidence has adduced showing a reasonable probability that the result of the trial would have been different had trial counsel made a motion for change of venue which, of course, would have carried with it no guarantee that venue would have been changed.

No evidence was presented that shows a reasonable probability of a different outcome at trial had trial counsel made a motion to disqualify all of the Sixth Circuit's Judiciary, contacted prior counsel, moved to have DNA testing several items or moved to have a separate trial from that of the co-defendant Pannell. In fact co-defendant Pannell's motion for separate trials was denied and Petitioner has failed to show a basis for severance. Accordingly, the Court **FINDS** and **CONCLUDES** that Petitioner has failed to prove "Prejudicial Joinder of Defendants" by a preponderance of the evidence and the claim is hereby denied.

With respect to the lack of a DNA request by trial counsel the Court finds the assertion by the State on the issue of lack of a reasonable probability of a different outcome is most compelling; "...if a third person's DNA were to have been found on any of these items, Petitioner would still have to overcome the propositions, adduced during trial, his fingerprints were found in the vehicle he fled from and that, other than the victims, he and Codefendant Pannell were the only civilians encountered by Police in the vicinity of the railroad tracks and during the time period in question. (Trial Transcript, pp. 195)."

Finally, appellate counsel's apparent agreement to forego oral argument during the prosecution of Petitioner's appeal cannot have any impact on the outcome of Petitioner's trial; however, it does demonstrate that an appeal was taken. Accordingly, the Court **FINDS** and

*Appendix -11*

11

**CONCLUDES** that Petitioner has failed to prove "Failure of Counsel to Take an Appeal" by a preponderance of the evidence and the claim is hereby denied.

Given these findings, the Court finds that Petitioner has failed to demonstrate that trial counsel or appellate counsel's representation was deficient in any of these respects under the objectively reasonable standard found in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995), and, further, even if deficient performance had been demonstrated, Petitioner has failed to show a reasonable probability that the result of the trial would have been but for the alleged unprofessional errors. Accordingly, the Court **FINDS** and **CONCLUDES** that Petitioner has failed to prove "Ineffective Assistance of Counsel" by a preponderance of the evidence and the claim is hereby denied.

### *Irregularities in Arrest*
### *(Ground #7)*

Petitioner's claims of prejudice throughout trial because of irregularities in his arrest rest upon an attempted "show up" identification procedure employed by the Huntington Police Department after the apprehension of Petitioner and Co-defendant Pannell. The victims were unable to identify the Petitioner and Co-defendant Pannell at the "show up" or at trial other than to say they match the general build of the pair that robbed them. Accordingly, the Court **FINDS** and **CONCLUDES** that Petitioner has failed to prove "Irregularities in Arrest" by a preponderance of the evidence and the claim is hereby denied.

### *Sufficiency of the Evidence, Acquittal of Co-defendant on Same Charge*
### *(Ground #20 and #21)*

Petitioner failed to adduce any evidence tending to support Petitioner's allegation of "Sufficiency of the Evidence" and "Acquittal of Co-defendant on Same Charge" as Petitioner's

12

*Appendix - 12*

codefendant, Roshawn Pannell, was also convicted of the robberies of the three victims after which he appealed on the basis of insufficiency of evidence. In affirming Pannell's conviction, the Supreme Court of Appeals held that sufficient evidence existed to believe that there was a robbery and that Pannell participated in it. It is plain from a reading of the underlying trial transcript that the evidence against Petitioner is similar in kind and quality to the evidence against Pannell and, therefore, the Court finds sufficient evidence existed to support the guilty verdict in this matter. Accordingly, the Court **FINDS** and **CONCLUDES** that Petitioner has failed to prove "Sufficiency of the Evidence" and "Acquittal of Co-defendant" on Same Charge" by a preponderance of the evidence and the claim is hereby denied.

### All Remaining Grounds Asserted

The following grounds were asserted on the *Losh* Checklist, however, were not included in the Amended Petition or any supplemental filings. Petitioner failed to adduce any evidence tending to support Petitioner's allegations for Ground #1 "Statute Under Which Indictment was Obtained", Ground #4 "Suppression of Helpful Evidence by the Prosecutor", Ground #5 "State's Knowing Use of Perjured Testimony", Ground #8 "Irregularities in Arraignment", Ground #9 "Challenges to the Grand Jury Composition or Procedures", Ground #10 "Defects in the Indictment", Ground #12 "Refusal of Continuance", Ground #14 "Nondisclosure of Grand Jury Minutes", Ground #15 "Refusal to Turn Over Witness Notes After Witness Has Testified", Ground #19 "Prejudicial Statements by the Prosecutor", Ground #22 "Improper Communication Between Prosecutor and Witness or Jury", Ground #23 "Severer Sentence Than Expected", Ground #24 "Execessive Sentence", Ground #25 "Mistaken Advice of Counsel as to Parole Eligiblity", and Ground #26 "Amount of Time Served on Sentence, Credit for Time Served". Accordingly, the Court **FINDS** and **CONCLUDES** that the Petitioner has failed to prove any of

13

*Appendix-13*

these claims by a preponderance of the evidence as these contentions are insufficiently developed and are hereby dismissed.

Therefore, this Court finds that the Petitioner is entitled to no relief, and it is hereby **ORDERED** that the Amended Petition for Post-Conviction Habeas Corpus relief sought is **DENIED**. This is a final order dismissing this action from the active docket of this Court. The Circuit Clerk shall forward certified copies of this order to the following:

Jamie Turner
Mount Olive Correctional Complex
1 Mountainside Way
Mt. Olive, WV 25185

Mark Hobbs
PO Box 974
Chapmanville, WV 25508

Philip J. Morrison, II, Special Prosecutor
WV Prosecuting Attorneys Institute
The Cambridge Building, Ste 202
90 MacCorkle Ave., S.W.
South Charleston, WV 25303

Enter this Order this _14_ day of September, 2015.

PREPARED FOR ENTRY:

_Stacy Adkins_
Stacy Adkins, Law Clerk

ORDER ENTERED:

_Alfred E. Ferguson_
Alfred E. Ferguson, Judge

*Appendix – 14*

STATE OF WEST VIRGINIA
COUNTY OF CABELL
   I, JEFFREY E. HOOD, CLERK OF THE CIRCUIT COURT FOR THE COUNTY AND STATE AFORESAID DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE COPY FROM THE RECORDS OF SAID COURT ENTERED ON _____
   GIVEN UNDER MY HAND AND SEAL OF SAID COURT THIS _____ MAY 2 8 2015
_____, CLERK
CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

14