## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **A.D.**

**No. 23-194** (Calhoun County CC-07-2022-JA-30)

## MEMORANDUM DECISION

Petitioner Father S.D.[1] appeals the Circuit Court of Calhoun County's March 9, 2023, order adjudicating him as an abusing parent, arguing that the circuit court erred by adjudicating him as an abusing parent and failing to adhere to mandatory timeframes.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In October 2022, the DHS filed a petition alleging the petitioner abused and neglected the child by abandoning her and failing to protect her from the mother's drug and alcohol use. In November 2022, the DHS filed an amended petition that removed the allegation that the petitioner abandoned the child but maintained that he failed to protect the child from the mother's drug and alcohol use and deplorable living conditions. In both petitions, the factual narrative was the same. Child Protective Services ("CPS") visited the child's home and observed empty beer cans, liquor bottles, and lack of a functional lavatory. The petitions stated that the mother took a drug test that was positive for methamphetamine. The petitions further stated that the child's teacher expressed concern for her because the child often came to school unclean and smelling of urine. Relevant to the petitioner's appeal, the circuit court entered an order placing the child in the temporary custody of the DHS on November 1, 2022.

At its February 2, 2023, adjudicatory hearing, the circuit court heard testimony from the mother, who described the frequency of the petitioner's visits with the child. The mother testified that the petitioner would visit every few months when he was in town for work. The petitioner

---

[1] The petitioner appears by counsel Daniel K. Armstrong. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Katica Ribel. Counsel Michael Hicks appears as the child's guardian ad litem.

[2] Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

testified that he saw the child every six weeks but could not say with certainty where she attended school. The circuit court accepted the mother's stipulation and adjudicated her of abusing and neglecting the child. On March 9, 2023, the circuit court entered an order adjudicating the petitioner as an abusing parent for failing to provide necessary supervision for A.D. The circuit court found that the petitioner saw the child sporadically, did not communicate with the child's schoolteachers or medical providers, and abdicated his parental responsibilities to the mother. The court further noted that the petitioner had the responsibility to provide adequate supervision and did not bother to investigate the conditions in the home where his child was residing. Thus, the petitioner was adjudicated of neglecting the child. It is from this order which the petitioner appeals.[3]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner first argues that he was adjudicated upon allegations that were not asserted in the initial or amended petition, but this argument lacks a basis in the record. The petitioner's argument turns entirely on the DHS's use of the phrase "failed to protect" in the petition and the circuit court's later adjudication of the petitioner upon his failure "to supply his child, [A.D.], with necessary supervision to ensure her safety." This is an issue of semantics that cannot entitle the petitioner to relief, especially given the extreme detail set forth in the DHS's petitions. Both petitions described the deplorable conditions in the mother's home and the child's regularly poor hygiene at school and further alleged that the petitioner's inaction allowed the child to be exposed to these conditions. As we have explained, "[t]he purpose of requiring specific allegations is to afford the charged parent with notice of why the termination proceeding is being conducted and to afford him an opportunity to address the charge." *In re Samantha M.*, 205 W. Va. 383, 389, 518 S.E.2d 387, 393 (1999) (citation omitted). This procedure "is, in effect, required to guarantee that the parent will not be deprived of his custodial rights without due process of law as is required." *Id.* (citations omitted). Here, the petitioner was afforded all proper due process, and the circuit court properly adjudicated the petitioner upon the exact facts as alleged in the petitions. The petitioner was aware of the facts at issue, and the circuit court's choice of vocabulary does not invalidate the petitioner's adjudication. Thus, the petitioner's argument entitles him to no relief.

Next, the petitioner argues that the DHS did not prove that the child was abused. However, the petitioner was adjudicated of neglect; thus, his arguments are inapplicable. The petitioner further argues that it was never established that he had knowledge of the mother's drug use or the conditions in the home, but this argument is erroneously predicated on the definition of "[a]bused child," which includes a requirement that a parent *know* of abuse. *See* W. Va. Code § 49-1-201 (defining "[a]bused child," in relevant part, as one "whose health or welfare is being harmed or threatened by . . . [a] parent . . . who *knowingly* or intentionally inflicts, attempts to inflict, or

---

[3] The mother was adjudicated via stipulation and granted a post-adjudicatory improvement period. According to the record, the petitioner successfully completed his improvement period, the child was returned to his custody, and he was dismissed from the proceeding. The permanency plan for the child is reunification with both parents under an agreed parenting plan.

*knowingly* allows another person to inflict" various injuries (emphasis added)).[4] On the contrary, a "[n]eglected child" is defined, in relevant part, as a child "[w]ho is presently without necessary food, clothing, shelter, medical care, education, or supervision because of the disappearance or absence of the child's parent or custodian" *Id*. § 49-1-201. The circuit court found that the DHS proved by clear and convincing evidence that the petitioner failed to provide the child with necessary supervision. The petitioner argues he was adjudicated upon "speculation and inferences" and the court's "clearly erroneous finding that the petitioner should have thoroughly investigated the Respondent Mother's home on a regular basis." This argument has no merit, as the circuit court found that the petitioner only saw the child once every few months, did not communicate with the child's teachers or medical providers, and abdicated his parental responsibilities to the mother. The circuit court adjudicated the petitioner of neglect based upon ample evidence of his absence in the child's life that resulted in his failure to supervise the child; thus, we find no error in the petitioner's adjudication.

Finally, the petitioner argues for the first time on appeal that the circuit court erred by failing to adhere to the timelines in Rules 25 and 27 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings because it exceeded the thirty days it was allotted to hold an adjudicatory hearing after the filing of a temporary custody order and exceeded the ten days it was allotted to enter an adjudicatory order. Although we recognize that the circuit court did not strictly comply with these requirements, the petitioner fails to allege how he was prejudiced. Instead, he merely asserts that "[t]hese procedural delays . . . impacted the Petitioner's due process rights and are not in the best interest of the child." We remind the circuit court that our procedural rules are not "mere general guidance" and demand adherence. *See In re Edward B.*, 210 W. Va. 621, 632, 558 S.E.2d 620, 631 (2001). However, the petitioner fails to point out where he objected to these delays. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). Due to the petitioner's failure to preserve his argument, we decline to disturb the findings of the circuit court.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 9, 2023, order is hereby affirmed.

Affirmed.

**ISSUED**: May 13, 2024

---

[4] The petitioner raises arguments that the court improperly shifted the burden from the DHS, but these arguments are similarly inapplicable as they are also predicated on his misinterpretation of the proof necessary to establish neglect. Central to the petitioner's argument about burden shifting is his belief that the DHS was required to prove knowledge. Because neglect requires no such evidence, he is entitled to no relief.

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn