**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **G.L.**

**No. 25-139** (Kanawha County CC-20-2023-JA-365)

**MEMORANDUM DECISION**

Petitioner Grandmother D.L.[1] appeals the Circuit Court of Kanawha County's January 30, 2025, order denying her motion to intervene in the underlying abuse and neglect proceedings, arguing that the circuit court denied her a meaningful opportunity to be heard.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In 2017, the Circuit Court of Kanawha County terminated the parental rights of R.L.—the petitioner's son and G.L.'s biological father—in a prior child abuse and neglect proceeding based upon domestic violence. In violation of the order terminating his parental rights, R.L. continued to live with G.L. and her mother until October 2023, when he shot the mother in G.L.'s presence. Following this incident, R.L. was arrested and the DHS initiated the instant abuse and neglect proceedings against the mother, who voluntarily relinquished her parental rights in August 2024. The child was placed in a foster placement who intended to adopt her.

In November 2024, the petitioner filed a self-represented motion to intervene, and the circuit court held a hearing on the petitioner's motion in January 2025. At the hearing, the petitioner testified that she was unaware of the termination of R.L.'s parental rights, but overheard R.L. stating that he was not allowed to be around G.L. The petitioner represented that her son resided with her during the pendency of the earlier abuse and neglect proceedings. The petitioner further represented that R.L. brought the child to the petitioner's house on a monthly basis until October 2023 and last left G.L. alone with her in July 2023. She also explained that R.L. resided at her house both in the period immediately after the shooting and following his release on bond. However, R.L.'s bond was revoked after he and the petitioner attempted to contact the mother regarding G.L., in violation of the bond's terms. The petitioner stated that she did not make any further attempt to locate or contact the child following this event, so as not to get R.L. into trouble,

---

[1] The petitioner appears by counsel Ronald N. Walters Jr. and Beverly Hall. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Andrew T. Waight. Counsel Jennifer N. Taylor appears as the child's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

1

and heard nothing further about the matter until October 2024, when she was informed that the child was being adopted. The petitioner indicated that she immediately filed the motion to intervene and spoke to DHS employees upon learning about the adoption, but did not request a home study. The petitioner claimed that she would protect the child from R.L. but expressed "hope that someday" he would get his parental rights back. In addition, when questioned by the guardian, the petitioner disputed the child's presence at the time of the shooting—which she referred to as an "accident."

Ultimately, the circuit court entered an order denying the petitioner's motion to intervene. The court found that the petitioner was not a custodial relative or significant caregiver of G.L. and that the child had never resided with the petitioner. The court further found that the petitioner had no contact with G.L. for over a year and that the child had resided in foster care during the entirety of the proceedings. Additionally, the court considered the guardian's representation that G.L., then ten years old, expressed a desire to have no further contact with the petitioner. Based upon these factors, the court concluded that the petitioner was not entitled to notice and the opportunity to be heard under West Virginia Code §§ 49-4-601(h) and 49-4-608(j). As a result, the court found that intervention by the petitioner was inappropriate and not in the best interests of G.L. It is from this order that the petitioner appeals.[3]

On appeal from an order regarding an individual's motion for permissive intervention in a child abuse and neglect proceeding pursuant to West Virginia Code § 49-4-601(h), this Court

> review[s] de novo whether the individual seeking permissive intervention was afforded "a meaningful opportunity to be heard" . . . and we review for an abuse of discretion a circuit court's decision regarding the "level and type of participation" afforded to individuals seeking permissive intervention, i.e., foster parents, pre-adoptive parents, and relative caregivers, pursuant to Syllabus point 4, in part, *State ex rel. C.H. v. Faircloth*, 240 W. Va. 729, 815 S.E.2d 540 (2018).

Syl. Pt. 1, in part, *In re H.W.*, 247 W. Va. 109, 875 S.E.2d 247 (2022). Before this Court, the petitioner argues that the circuit court erred in denying her motion to intervene, asserting that she has a right to intervention as a "relative caregiver" under West Virginia Code § 49-4-601(h). *See id.* (providing that "relative caregivers shall . . . have a meaningful opportunity to be heard" in abuse and neglect proceedings). However, we note that the petitioner's argument improperly equates "a meaningful opportunity to be heard" under the statute with a right to intervene. This Court has explained that "[f]oster parents, pre-adoptive parents, or [sic] relative caregivers who occupy only their statutory role as individuals entitled to a meaningful opportunity to be heard . . . are subject to discretionary limitations on the level and type of participation as determined by the circuit court." *In re H.W.*, 247 W. Va. at 111, 875 S.E.2d at 249, Syl. Pt. 4 (second alteration in original) (quoting *Faircloth*, 247 W. Va. at 732, 815 S.E.2d at 542, Syl. Pt. 4, in part). Further, the precedent of this Court demonstrates that the circuit court was not required to grant the petitioner's permissive motion to intervene, even in light of her status as the child's paternal grandmother. *See id.* at 116-20, 875 S.E.2d at 254-58 (affirming the denial of a motion to intervene filed by the

---

[3] The permanency plan for the child is adoption in the current placement.

child's foster parents'—who were also the child's paternal grandparents—after concluding that they did not have a right to intervene as they did not have custodial rights "prior to the institution of the instant abuse and neglect proceeding"). Here, the circuit court conducted a hearing on the petitioner's motion to intervene and permitted the petitioner to testify regarding her bond with the child. The court considered this testimony in combination with other evidence, including the guardian's representations about the child's wishes, in exercising its discretion to limit the petitioner's participation and denying the petitioner intervenor status. Accordingly, we conclude that the circuit court did not err in denying the petitioner's motion to intervene.[4]

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 30, 2025, order is hereby affirmed.

Affirmed.

**ISSUED:** May 6, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

---

[4] The petitioner raises additional assignments of error relating to G.L.'s initial removal and placement during the underlying proceedings and the effect of orders from the 2017 abuse and neglect proceedings involving R.L. However, the petitioner did not raise these alleged issues below; accordingly, they are waived. *See Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) ("'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999)."). As such, we decline to address these assignments of error.